IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE CONAGRA PEANUT BUTTER PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 1845<br>1:07-md-1845-TWT |
| ARTIE SOUTHERN, et al.,<br>   Plaintiffs,<br>      v.<br>CONAGRA FOODS, INC.,<br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:09-CV-1544-TWT |
| KIMBERLY ABRAHAM individually and as next friend of Autumn Abraham, a minor, et al.,<br>   Plaintiffs,<br>      v.<br>CONAGRA FOODS, INC.,<br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:09-CV-2844-TWT |
| WENDY JOAN AHRENS an individual, et al.,<br>   Plaintiffs,<br>      v.<br>CONAGRA FOODS, INC.,<br>a Delaware corporation, et al., | CIVIL ACTION FILE<br>NO. 1:08-CV-3693-TWT |

|  |  |
|---|---|
| Defendants. |  |
| RICKIE GENE BOWMAN,<br><br>    Plaintiff,<br><br>        v.<br><br>CONAGRA FOODS, INC.,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:09-CV-874-TWT |
| KATRINA DAVIS, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>CONAGRA FOODS, INC., a<br>Delaware Corporation,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:09-CV-726-TWT |
| LAMONT ANDERSON<br>an individual, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>CONAGRA FOODS, INC., a<br>Delaware corporation,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:09-CV-1545-TWT |
| JAMAAL ALI BILAL,<br><br>    Plaintiff,<br><br>        v.<br><br>CONAGRA FOODS, INC.,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 1:09-CV-1264-TWT |

| | |
|---|---|
| ROBERTA PELT,<br><br>   Plaintiff,<br><br>     v.<br><br>CONAGRA FOODS, INC.,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:07-CV-2076-TWT |
| BEVERLY CAPLEY,<br><br>   Plaintiff,<br><br>     v.<br><br>CONAGRA, INC., et al.,<br><br>   Defendants. | CIVIL ACTION FILE<br>NO. 1:07-CV-2235-TWT |
| GRADY WARE, et al.,<br><br>   Plaintiffs,<br><br>     v.<br><br>CONAGRA FOODS, INC.<br>a Delaware Corporation,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:07-CV-1714-TWT |
| A.J. FERRARA<br>on his own behalf and on behalf of<br>others similarly situated, et al.,<br><br>   Plaintiffs,<br><br>     v.<br><br>CONAGRA FOODS, INC.,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:08-CV-82-TWT |

JOY DAVIS, et al.,

   Plaintiffs,

    v.

CONAGRA FOODS, INC.,

   Defendant.

CIVIL ACTION FILE
NO. 1:09-CV-3127-TWT

ORDER

These are personal injury actions pending in this MDL proceeding. They are before the Court on the Defendant's Motion for Summary Judgment [Doc. 1544], which is GRANTED.

I. Introduction

In February 2007, ConAgra Foods, Inc. recalled jars of Peter Pan and Great Value peanut butter that were manufactured at its Sylvester, Georgia plant after the CDC and FDA reported an association between these products and Salmonella Tennessee. In a press release, ConAgra instructed consumers to discard the jar but to save the lid, which contained the product code. (Pelt's Response to Def.'s Mot. for Summ. J., Ex. 3.) The product code identifies when and where the peanut butter was manufactured. This tells ConAgra whether the peanut butter was at risk of contamination. The FDA also warned consumers not to eat affected Peter Pan or Great Value peanut butter. The FDA press release directed consumers to discard the

peanut butter but did not tell them to save the lid. (Def.'s Mot. for Summ. J., Ex. 3.)

After the recall, some consumers sued ConAgra, alleging that they contracted Salmonellosis, a bacterial infection caused by Salmonella Tennessee, after eating Peter Pan or Great Value peanut butter. The lawsuits were consolidated in this Court for pretrial proceedings. During discovery, ConAgra asked the Plaintiffs to provide the product code for the peanut butter that allegedly caused their illnesses. It also asked the Plaintiffs whether they submitted a blood, urine, or stool sample to a doctor for testing. Because the symptoms of Salmonellosis are similar to those of other common gastrointestinal illnesses, these samples are important in determining causation. Some of the Plaintiffs did not know their peanut butter's product code and did not say whether they had a positive blood, urine, or stool sample. ConAgra now moves for summary judgment against these Plaintiffs on causation grounds.

The following Plaintiffs are subject to ConAgra's Motion for Summary Judgment: Pamela Bailey (on behalf of E.E. and J.B.), Jeremy Elwood, Maria Blanco (on behalf of herself and J.B.), Thad Creecy, Brandon Henderson, Brenda Henderson, Keccia Henderson, John Scott, Cheri Pittman, Julie Canelon (on behalf of E.L.), Jenesis Lowe, Mary McCarty (on behalf of T.M.), Jamaal Bilal, Roberta Pelt, Deanna Capelli (on behalf of N.F.), and Michael Mehlhoff. ConAgra has withdrawn its Motion for Summary Judgment against Carolyn Debnam, Dedrick Leary, George

Masek (on behalf of J.M.), Rebecca McNemar, Mary Sinyard (on behalf of J.P.), Key Streeter, Amanda Turner, Jay Turner, Roberta Warden, Odell White, and Joada Casey. The remaining Plaintiffs identified in the Motion for Summary Judgment no longer have cases pending before the Court. Therefore, ConAgra's Motion for Summary Judgment is denied as moot with respect to these Plaintiffs.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III. Discussion

To prove causation, each Plaintiff must show that it is more likely than not that contaminated peanut butter caused his illness. The best way to show that peanut butter is contaminated with Salmonella is to test the peanut butter itself. The fact that the peanut butter was recalled does not mean that it was contaminated. In fact, most of the recalled peanut butter was free of Salmonella contamination. For example, post-recall testing of 1,340 jars of peanut butter thought by potential claimants to have caused illness yielded a positive rate for Salmonella of less than two percent. In Re Conagra Peanut Butter Products Liability Litigation, 251 F.R.D. 689, 691 (N.D. Ga. 2008). Undistributed product tested by the FDA showed even lower rates of contamination. Id.

Absent direct evidence of contamination, a plaintiff may use circumstantial evidence to show that he ate contaminated peanut butter. For example, he could show that the peanut butter was manufactured at the Sylvester plant during the outbreak period, thereby increasing the likelihood of contamination. Or he could provide medical records showing that he contracted Salmonellosis shortly after eating the peanut butter.

Here, the Plaintiffs do neither. First, they cannot show that the peanut butter they ate was manufactured by ConAgra at the Sylvester plant during the outbreak

period. Each jar of peanut butter has a product code stamped onto the lid of the jar. The first four numbers identify where the jar of peanut butter was manufactured. The remaining numbers identify the date, time, and manufacturing line on which the jar of peanut butter was manufactured. Jeremy Elwood, Maria Blanco, Brandon Henderson, Brenda Henderson, Keccia Henderson, Cheri Pittman, Jenesis Lowe, Jamaal Bilal, and minors E.E., J.B., J.B, E.L., and T.M. do not know the product codes from their peanut butter. (Def.'s Mot. for Summ. J., Ex. 5-1 at 6, 17, 28, 39, 54, 80, 91, 102; Ex. 5-2 at 6, 27, 37, 48; Ex. 5-7 at 6.) Plaintiff Deanna Capelli claims that the product code from her peanut butter began with 2111 but says that the peanut butter was Kroger Smith brand, which ConAgra does not manufacture. (Def.'s Mot. for Summ. J., Ex. 5-11 at 7.) Finally, Plaintiffs Thad Creecy, John Scott, Roberta Pelt, and Michael Mehloff say that the product codes on their peanut butter began with 2111, but they do not know the remaining numbers. (Def.'s Mot. for Summ. J., Ex. 5-1 at 69, 113, Ex. 5-12 at 6; Pelt's Response to Def.'s Mot. for Summ. J., Ex. 8 ¶ 3.) Without these numbers, which indicate when the peanut butter was manufactured, it is impossible to know whether the peanut butter was at risk of contamination.

Roberta Pelt and Deanna Capelli argue that they should not be penalized for following the FDA's instructions to discard the entire jar of peanut butter. However, ConAgra explicitly instructed consumers to save the lid of the jar. (Pelt's Response

to Def.'s Mot. for Summ. J., Ex. 3.)  The Plaintiffs did not follow these instructions, nor did they photograph the lid or otherwise record the product code.  Accordingly, the fault does not lie with ConAgra, and the Plaintiffs are not excused from showing evidence of causation.

Second, the Plaintiffs do not provide enough evidence to show that they contracted Salmonellosis shortly after eating the peanut butter.  A positive blood, urine, or stool sample is the best way to show that Salmonella Tennessee caused a plaintiff's illness. (Def.'s Mot. for Summ. J., Ex. 3 at 14, Ex. 6 at 7.)  A differential diagnosis by a physician who examined and treated a plaintiff during his illness may also support a finding of causation.  (See Def.'s Mot. for Summ. J., Ex. 3 at 14.)  Symptoms alone, however, are not enough to permit a reliable diagnosis. (Def.'s Mot. for Summ. J., Ex. 3 at 14, Ex. 6 at 4.)  This is because the symptoms of Salmonellosis – usually diarrhea, abdominal cramps, and fever – are more commonly associated with viruses, parasites, fungi, other bacteria, toxins, and chronic diseases. (Def.'s Mot. for Summ. J., Ex. 6 at 4-10.)  For example, the CDC estimates that 300 million cases of diarrhea and related gastrointestinal symptoms occur each year.  (Def.'s Mot. for Summ. J., Ex. 3 at 16, Ex. 6 at 13.)  Only a fraction of a percent of these 300 million cases were caused by peanut butter contaminated with Salmonella Tennessee. (Def.'s Mot. for Summ. J., Ex. 6 at 13; see also Ex. 2 at 2. )

None of the Plaintiffs here provide evidence of a differential diagnosis or a positive blood, urine, or stool culture. The Court has medical records from only four Plaintiffs – Roberta Pelt, John Scott, Maria Blanco, and minor J.B. (See Def.'s Mot. for Summ. J., Ex. 5-1 at 47-49, 62-64, 120-121; Pelt's Response to Def.'s Mot. for Summ. J., Ex. 9.) None of the records indicate that the Plaintiffs' doctors considered and excluded other causes or performed any form of differential diagnosis or diagnostic tests. (See id.) To the contrary, the records show that Scott, Blanco, and J.B. did not even visit the doctor until several months after eating the allegedly contaminated peanut butter and that Pelt was "treated symptomatically." (See id.) Without more, no reasonable jury could find that it is more likely than not that contaminated peanut butter caused the Plaintiffs' illnesses. Accordingly, ConAgra is entitled to summary judgment.

## IV.  Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment [Doc. 1544] is GRANTED.

SO ORDERED, this 28 day of September, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge